IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAKEEN BROWN,<br><br>    Plaintiff,<br><br>v.<br><br>VIVINT SOLAR, INC., DAVID BYWATER, DAVID F. D'ALESSANDRO, BRUCE MCEVOY, JAY D. PAULEY, TODD R. PEDERSEN, ELLEN S. SMITH, JOSEPH S. TIBBETTS, JR., and PETER F. WALLACE,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Wakeen Brown ("Plaintiff") by and through Plaintiff's undersigned attorneys, brings this action on behalf of Plaintiff, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Vivint Solar, Inc. ("Vivint" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Vivint and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Vivint and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by affiliates of Sunrun Inc. ("Sunrun") (the "Proposed Transaction").

2. On July 6 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Sunrun. Pursuant to the terms of the Merger Agreement Vivint Solar shareholders will receive $0.55 shares of Sunrun common stock for each share of Vivint Solar common stock owned (the "Merger Consideration").

3. On August 14, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Vivint and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Vivint shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, the owner of Vivint shares.

9. Defendant Vivint is incorporated under the laws of Delaware and has its principal executive offices located at 1800 West Ashton Blvd., Lehi, UT 84043. The Company's common stock trades on the New York Stock Exchange under the symbol "VSLR."

10. Defendant David Bywater ("Bywater") is and has been Vivint's Chief Executive Officer and member of the Board at all times during the relevant time period.

11. Defendant David F. D'Alessandro ("D'Alessandro") is and has been a director of Vivint at all times during the relevant time period.

12. Defendant Bruce McEvoy ("McEvoy") is and has been a director of Vivint at all times during the relevant time period.

13. Defendant Jay D. Pauley ("Pauley") is and has been a director of Vivint at all times during the relevant time period.

14. Defendant Todd R. Pedersen ("Pedersen") is and has been a director of Vivint at all times during the relevant time period.

15. Defendant Ellen S. Smith ("Smith") is and has been a director of Vivint at all times during the relevant time period.

16. Defendant Joseph S. Tibbetts, Jr. ("Tibbetts") is and has been a director of Vivint at all times during the relevant time period.

17. Defendant Peter F. Wallace ("Wallace") is and has been the Chairman of the Board at all times during the relevant time period.

18. Defendants Bywater, D'Alessandro, McEvoy, Pauley, Pedersen, Smith, Tibbetts, and Wallace are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants, along with Defendant Vivint, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

20. Vivint is a leading full-service residential solar provider in the United States. Founded in 2011, Vivint provides homeowners with simple and affordable clean energy. Vivint designs and installs solar energy systems for homeowners and offers monitoring and maintenance services. Vivint also offers solar plus storage systems with LG Chem home batteries and electric vehicle chargers with ChargePoint Home.

**The Company Announces the Proposed Transaction**

21.   On July 6, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> SAN FRANCISCO, July 06, 2020 (GLOBE NEWSWIRE) -- Sunrun (NASDAQ: RUN), a leading provider of residential solar, battery storage and energy services, and Vivint Solar (NYSE: VSLR), a leading full-service residential solar provider in the United States, today announced the companies have entered into a definitive agreement under which Sunrun will acquire Vivint Solar in an all-stock transaction, pursuant to which each share of Vivint Solar common stock will be exchanged for 0.55 shares of Sunrun common stock, representing a combined Enterprise Value of $9.2 billion based on the closing price of Sunrun's shares on July 6, 2020. Vivint Solar stockholders are expected to own approximately 36% and Sunrun stockholders are expected to own approximately 64% of the fully diluted shares of the combined company. The exchange ratio implies a 10% premium for Vivint Solar shares based on closing prices on July 6, 2020, and a 15% premium to the exchange ratio implied by the three month volume weighted average price of Vivint Solar and Sunrun shares.
>
> "Americans want clean and resilient energy. Vivint Solar adds an important and high-quality sales channel that enables our combined company to reach more households and raise awareness about the benefits of home solar and batteries," said Lynn Jurich, Sunrun's Chief Executive Officer and co-founder. "This transaction will increase our scale and grow our energy services network to help replace centralized, polluting power plants and accelerate the transition to a 100% clean energy future. We admire Vivint Solar and its employees, and look forward to working together as we integrate the two companies."
>
> David Bywater, Chief Executive Officer of Vivint Solar, added, "Vivint Solar and Sunrun have long shared a common goal of bringing clean, affordable, resilient energy to homeowners. Joining forces with Sunrun will allow us to reach a broader set of customers and accelerate the pace of clean energy adoption and grid modernization. We believe this transaction will create value for our customers, our shareholders, and our partners."
>
> **A Shared Mission to Create a Planet Run by the Sun**
>
> Sunrun and Vivint Solar share a mission to create a planet run by the sun. Together, we can empower more families to take control of their energy future by increasing customer choice in how they create and consume power.

There is an urgent need to decarbonize our energy system. Extreme weather due to climate change is increasing, putting immense strain on our energy system. Fossil fuel power plants are responsible for more than 30% of all carbon pollution across the country. Sunrun will be a meaningful contributor to a fully renewable and electrified energy system. Our growing fleet of solar homes and batteries will be networked to provide greater benefits to the grid and energy consumers. Generating energy at the point it is used reduces the need for dirty energy being produced far away that is increasingly expensive to transmit. Our customers have already and will continue to help shut down inefficient carbon-producing power plants.

Our combined customer base of nearly 500,000 creates a leading owner of solar assets globally, with over 3 gigawatts of solar assets on the balance sheet. Yet, residential solar has reached only 3% penetration in the United States today and the runway for growth remains massive.

Sunrun has committed to leading the solar industry in diversity and inclusion efforts, career development, and employee benefits. As part of a broader, more diversified company, we will be able to offer employees even more opportunities and solidify our position as the best place to work in the solar industry.

**Strategic Rationale**

This is a transformational opportunity to generate consumer and shareholder value, realize annual cost synergies and bring cleaner, affordable energy to more homes. It establishes Sunrun as a leading home solar and energy services company across the United States, bringing greater opportunities for consumers to save money on their electric bills and decrease dependence on fossil fuels.

Residential solar has reached only 3% penetration in the United States today and yet surveys show nearly 9 out of 10 people in the United States favor expanding the use of solar power. The acquisition of Vivint Solar adds a complementary direct-to-home sales channel to Sunrun's platform, increasing our reach and capabilities in a growing market. Our thirteen years of experience has shown that a consultative experience from trusted sales advisors is important to educate customers of the merits of solar energy. Vivint Solar's highly trained, consultative field sales experts will be an important part of the combined platform and will serve as critical ambassadors for consumers to learn the benefits of solar energy.

Like Sunrun, Vivint Solar has adapted to the current environment, accelerating digital lead generation efforts and providing a contact-less selling and installation experience in most instances. This transition has resulted in improvements for both companies, including setting the

foundation for structural cost reductions and improved customer experience.

We expect to deliver meaningful cost synergies, estimated at $90 million on an annual basis. We see opportunities across the entire cost base, including consolidating and optimizing our branch footprint, reducing redundant spending on technology systems, scaling our proprietary racking technology, as well as improving sourcing capabilities within our supply chains. There are also opportunities to realize scale benefits from shared corporate functions including accounting, human resources, legal, and policy.

We expect additional revenue synergies to generate enhanced value creation for our customers and shareholders from a larger base of solar assets. We expect to be able to offer batteries to the combined base of solar customers. A larger footprint of solar and battery assets also increases the value of what we bring to our grid services partnerships and strengthens our ability to deliver considerable value in that business. We expect to benefit from efficiencies in large scale project finance capital raising activities and are excited about the opportunity to build an even stronger and more recognizable consumer brand in residential energy services.

**Benefits for Customers**

Most energy consumers are currently beholden to a single power company that provides electricity to them based on their household location. As a benefit of this combination, Sunrun's increased scale, operating efficiency and combined research and development (R&D) efforts will enable the company to even further accelerate the adoption of renewable energy and give households more control over their energy future.

A lower cost structure from greater scale can open more markets and allow lower pricing for customers, accelerating the transition away from polluting fossil fuels. It will also give our customers access to better, more affordable products and services. Lastly, combining R&D resources and focusing efforts will allow us to accelerate the offering of advanced solutions, such as virtual power plants and other energy services programs, to more customers in more markets.

**Transaction Details**

Under the terms of the definitive transaction agreement, each share of Vivint Solar common stock issued and outstanding immediately prior to the effective time of the merger will be converted automatically into the right to receive 0.55 shares of Sunrun common stock.

The Board of Directors of Sunrun and Vivint Solar have each unanimously voted in favor of the definitive transaction agreement.

The acquisition of Vivint Solar is expected to be completed during the fourth quarter of 2020, subject to approval by Vivint Solar and Sunrun stockholders, regulatory approvals and other customary closing conditions.

Sunrun's Board of Directors will be expanded by adding 2 directors, one of which is expected to be Vivint Solar's CEO, David Bywater.

Support Agreements have been obtained from both companies' largest stockholders, 313 Acquisition LLC (Blackstone affiliate) and Tiger Global, to vote their respective shares in favor of the merger and the share issuance, respectively.

In addition, 313 Acquisition LLC (Blackstone affiliate) has agreed to lock up 50% of shares obtained as a result of the acquisition for 60 days following closing and the remaining 50% for 120 days. Sales are allowed to occur during these periods subject to certain conditions.

**Advisors**

Credit Suisse Securities (USA) LLC is serving as the exclusive financial advisor to Sunrun and Cooley LLP and Axinn, Veltrop & Harkrider LLP are serving as legal counsel. Morgan Stanley & Co. LLC is serving as the lead financial advisor to Vivint Solar, BofA Securities, Inc. is serving as a financial advisor to Vivint Solar and Simpson Thacher & Bartlett LLP and Wilson Sonsini Goodrich & Rosati are serving as legal counsel.

### FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

22. On August 14, 2020, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Company's Financial Projections**

24. The Registration Statement contains projections prepared by the Company's and Sunrun's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26. In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

27. Specifically, with respect to the Sunrun Projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (a) Sunrun Total Volume (Megawatts), (b) Sunrun Total Megawatts, (c) Sunrun Total Costs, (d) Sunrun Net Cash Flow, (e) Vivint Solar Total Megawatts, (f) Vivint Solar Total Costs, (g) Vivint Solar Net Cash Flow, (h) Sunrun Projected Levered Cash Flow, (i) Total Sunrun Projected Cash Flow Scenario, (j) Vivint Solar Projected Levered Cash Flow Scenario, and (k) Total Vivint Solar Projected Levered Cash Flow Scenario.

28. With respect to the Sunrun Combined Company Forecasts, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (a) Aggregate Proceeds, and (b) Aggregate Costs

29. With respect to the Vivint Solar Management Projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (a) Vivint Solar Total Megawatts, (b) Vivint Solar Total System Costs, (c) Vivint Solar EBITDA, (d) Vivint Solar Levered Free Cash Flow, (e) Sunrun Total Megawatts, (f) Sunrun Total System Costs, (g) Sunrun EBITDA, and (h) Sunrun Levered Free Cash Flow.

30. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Morgan Stanley's Financial Opinion**

31. The Registration Statement contains the financial analyses and opinion of Morgan Stanley & Co. LLC ("Morgan Stanley") concerning the Proposed Transaction, but fails to provide material information concerning such.

32. With respect to Morgan Stanley's *Trading Comparables Analysis* -- Vivint, the Registration Statement fails to disclose: (i) the estimated outstanding shares of Company common stock on a fully-diluted basis; and (ii) the net debt of the Company as used by Morgan Stanley in the analysis.

33. With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis* – Vivint and for the Pro Forma company, the Registration Statement fails to disclose: (i) all line items used to calculate levered free cash flows; (ii) the underlying inputs used to derive Morgan Stanley's selection of the discount rate of 9.3% to 11.3%; (iii) the terminal values for Vivint; and (iv) Morgan Stanley's basis for the application of EBITDA trading multiples ranging from 12.0x to 16.0x.

34. With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis* – Sunrun, the Registration Statement fails to disclose: (i) all line items used to calculate levered free cash flows; (ii) the underlying inputs used to derive Morgan Stanley's selection o the discount rate of 9.4% to 11.4%; (iii) the terminal values for Sunrun; and (iv) Morgan Stanley's basis for the application of EBITDA trading multiples ranging from 12.0x to 16.0x.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding BofA's Financial Opinion**

35. The Registration Statement contains the financial analyses and opinion of BofA Securities, Inc. ("BofA") concerning the Proposed Transaction, but fails to provide material information concerning such.

36. With respect to BofA's *Selected Publicly Traded Companies Analysis* – Vivint, the Registration Statement fails to disclose the individual multiples and metrics for the companies selected by BofA for its analysis.

37. With respect to BofA's *Discounted Cash Flow Analysis* – Vivint, the Registration Statement fails to disclose: (i) the line items used to calculate levered, after-tax free cash flows; (ii) the underlying inputs used by BofA to derive the discount rate of 9.0% to 12.0%; (iii) the terminal values for Vivint Solar; and (iv) the basis for BofA's application of exit multiples ranging from 0.5x to 0.9x.

38. With respect to BofA's *Selected Publicly Traded Companies Analysis* – Sunrun, the Registration Statement fails to disclose the individual multiples and metrics for the companies selected by BofA for its analysis.

39. With respect to BofA's *Discounted Cash Flow Analysis* – Sunrun, the Registration Statement fails to disclose: (i) all line items used to calculate levered, after-tax free cash flows; (ii) the underlying inputs used by BofA to derive the discount rate of 10.0% to 13.5%; (iii) the terminal values for Sunrun; and (iv) the basis for BofA's application of exit multiples ranging from 1.1x to 1.5x.

40. With respect to BofA's *Has/Gets Analysis*, the Registration Statement fails to disclose: (i) the underlying inputs used by BofA to derive the discount rate of 10.00% to 13.50%; and (ii) the basis for BofA's application of a perpetuity growth rate of 0% to 1%.

41. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

42. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the

sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

51. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Vivint within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Vivint, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

57. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 26, 2020                                                          Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*